**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**JENNIFER L. PANNOCCHIA,**<br><br>**Defendant** | **CRIMINAL NO. 19-cr-00234 (TJK)** |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. As part of the Plea Agreement, the government agreed not to oppose a variance request by the defendant to a probationary sentence. If the Court imposes a term of probation, the government requests that the Court impose a three-year term of probation, order the defendant to pay restitution as agreed to in the amount of $169,832.23, and require the defendant to perform 100 hours of community service.

**BACKGROUND**

Defendant Jennifer L. Pannocchia ("Pannocchia" or "the defendant") pled guilty prior to trial to making false statements, in violation of 18 U.S.C. § 1001. The defendant admitted during her plea hearing, that while she was employed as a contract background investigator reporting to the United States Office of Personnel Management ("OPM"), she made false statements relating to more than a dozen Reports of Investigation ("ROIs") in background investigation, indicating that she had conducted interviews or reviewed a report regarding the subject of an investigation, when, in fact, she had not. *See* ECF No. 7 ¶ 5.

## PROCEDURAL HISTORY

On July 9, 2019, the government filed a one-count Information charging Pannocchia with false statements, in violation of 18 U.S.C. § 1001. *See* ECF No. 1. On August 5, 2019, the defendant pled guilty to the Information. *See* ECF Nos. 6-9. The defendant's false statements resulted in $169,832.23 in loss to the United States Office of Personnel, Management National Background Investigations Bureau ("OPM-NBIB") (which was formerly the Federal Investigative Services or "OPM-FIS"). On or about October 1, 2019, the Defense Counterintelligence and Security Agency ("DCSA") assumed the responsibility for conducting federal background investigations.[1] The defendant's sentencing hearing is scheduled for October 30, 2019 at 10:00 a.m.

## FACTUAL BACKGROUND

According to the Statement of Offense (ECF No. 7) signed by the defendant in connection with her guilty plea, Pannocchia admitted that she was an employee of USIS (formerly U.S. Investigative Services) an investigator under contract to conduct background investigations on behalf of the United States Office of Personnel Management ("OPM"), an agency within the executive branch of the federal government headquartered in Washington, D.C. OPM's Federal Investigation Services ("OPM-FIS"), became known as the National Background Investigations Bureau ("OPM-NBIB"), and was responsible for conducting background investigations for numerous federal agencies and their contractors. OPM-FIS had an investigator workforce comprised of federal agents employed by OPM-FIS and investigators employed by various companies, including USIS and KeyPoint, under contract with OPM-FIS,

[1] Thus, the Clerk of the Court should forward any restitution payments received from the defendant to: DCSA, 601 10th Street, Fort Meade, MD 20755.

to conduct background investigations. OPM-FIS conducted background investigations of individuals, who were either employed by or seeking employment with federal agencies or government contractors. The purpose of the background investigations was to determine individuals' suitability for positions having access to classified information, for positions impacting national security, for positions of public trust, and for receiving or retaining security clearances.

In conducting these background investigations, contract investigators would conduct interviews of individuals who had information about the person who was the subject of the background investigation. In addition, investigators would seek out, obtain, and review documentary evidence, such as employment records, to verify and corroborate information provided by the subject of the background investigation or by other persons interviewed during the investigation. After conducting interviews and obtaining documentary evidence, contract investigators would prepare a Report of Investigation ("ROI"), containing the results of the interviews and records reviews, and would electronically submit the ROI to OPM in Washington, D.C. OPM would then provide a copy of the investigative file to the requesting agency and maintain a copy in its records system.

The ROI containing the results of the interviews and records reviews conducted during a background investigation was utilized and relied upon by the agency requesting the background investigation to determine whether the subject of the investigation was suitable for a position having access to classified information, for a position impacting national security, for a position of public trust, or for receiving or retaining security clearance.

Between August 2013 and August 2014, in more than a dozen confirmed ROIs on background investigations, defendant Pannocchia represented that she had interviewed a source or

reviewed a record regarding the subject of the background investigation when, in truth and in fact, she had not conducted the interview or obtained the record. These false representations were material, as they influenced the government's decisions and activities with respect to the subjects of those background investigations. For example, on or about July 1, 2014, in the District of Columbia and elsewhere, the defendant, in a matter within the jurisdiction of the executive branch of the government of the United States, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, in that in an ROI of a background investigation of H.H., the defendant represented that she had interviewed J.B. about H.H., when in truth and in fact, the defendant had not interviewed J.B. about H.H.

On or about July 3, 2014, the defendant electronically submitted to OPM in Washington, D.C., her ROI on the background investigation of H.H., which contained the above-referenced false representation. This false representation was material, as it influenced the government's decisions and activities with respect to H.H. Pannocchia's false representations in her ROIs on background investigations required OPM-FIS to reopen and rework numerous background investigations that were assigned to the defendant during the time period of her falsifications, at an estimated cost of at least $169,832.23 to the United States government.

## SENTENCING GUIDELINES

### A. Statutory Maximum

The maximum penalty for a violation of 18 U.S.C. § 1001, false statements, is five years imprisonment. *See* ECF No. 10 ¶ 57.

### B. The Applicable Advisory Guidelines Range

The Supreme Court has declared that, in terms of determining an appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be

the starting point and the initial benchmark." *United States v. Gall*, 552 U.S. 38, 49 (2007) (citation omitted) ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.") *Id*. Although advisory, the Guidelines assure some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the Guidelines, while carefully considering the factors set forth in 18 U.S.C. § 3553(a) particularly relevant to an individual defendant, minimizes the disfavored result of disparate sentences by different judges for the same criminal conduct. Therefore, the Supreme Court has held that districts should "remain cognizant of [the Guidelines] throughout the sentencing process." *Id*., at 50 n.6.

Regarding Count One of the Information, the Presentence Report ("PSR") has calculated the defendant's total offense level at 13. *See* ECF No. 10 ¶ 27. This includes a base offense level of 6, pursuant to U.S.S.G. § 2B1.1(a)(1); an additional 10 levels for loss of more than $150,000, but less than $250,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(F). *Id*. ¶¶ 19-23. The PSR agreed with the government that pursuant to U.S.S.G. §§ 3E1.1(a), the defendant should receive a 3-level reduction for acceptance of responsibility. *Id*. ¶¶ 25-26. The Guideline range for Count One, level 13, criminal category I, Zone C, is 12-18 months of imprisonment. *Id*. ¶ 58-59.

As part of the plea agreement, the government agreed not to oppose the defendant's request for a variance to a probationary sentence. *See* ECF No. 6 ¶ 5.

**C. Restitution and Fine**

The defendant agreed in the written plea agreement to a total loss and restitution amount of $169,832.23. *See* ECF No. 6 at 8; ECF No. 10 ¶¶ 13, 14, 56, and 76. This loss arises from the costs OPM-NBIB actually incurred when it was forced to check and redo the work the defendant submitted during the time period of her falsifications.

Valuation is governed by U.S.S.G. § 2B1.1(b)(1) and includes all relevant conduct. *See* U.S.S.G. § 1B1.3(a)(2) (same course of conduct or common scheme or plan as the offense of conviction). For purposes of sentencing, the "loss" is the greater of either the actual loss or the intended loss. U.S.S.G. § 2B1.1, cmt. (n.3(A)); *see also United States v. Manas*, 272 F.3d 159, 165 (2d Cir. 2001) ("Consistent with the provisions applicable to conspiracy cases, the Commentary [of section 2F1.1] states that 'if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."), *cert. denied*, 537 U.S. 1023 (2002); *United States v. Studevent*, 116 F.3d 1559, 1561 (D.C. Cir. 1997) (finding actual loss should not limit the amount of intended loss attributed to defendant's crime under § 2F.1.1). "Actual loss" means the "reasonably foreseeable pecuniary harm that resulted from the offense" while "intended loss" includes "pecuniary harm that was intended to result from the offense" as well as "intended pecuniary harm that would have been impossible or unlikely to occur" (e.g., "an insurance fraud in which the claim exceeded the insured value"). U.S.S.G. § 2B1.1, cmt. (n.3(A)). "Reasonably foreseeable pecuniary harm" is defined as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." U.S.S.G. § 2B1.1, cmt. (n.3(A)(iv)).

Here, the loss amount of $169,832.23 arises from the costs OPM actually incurred when it was forced to check and redo the work the defendant submitted during the time period of her falsifications.[2] As Special Agent Philip W. Kroop explained in his attached affidavit, the discovery and confirmation of a falsification by defendant in one of her ROIs required OPM-NBIB to undertake a full recovery effort to ascertain the depth and scope of defendant's falsification

[2] The $169,832.23 restitution figure includes $148,040.72 in labor costs and $21,791.51 in travel costs spent by the federal government to conduct the recovery efforts pertaining to the defendant's background investigations.

activities. *See* Affidavit of Philip W. Kroop ("Kroop Affidavit" or "Kroop Aff.") (Exhibit 1 attached hereto). During the Pannocchia recovery effort, OPM-NBIB was required to rework 299 cases, which involved re-contacting 774 sources. *Id*. "The cost of the rework was a direct loss to OPM." *Id*. The Special Agents and administrative personnel assigned to this recovery project track the hours they spend working on this project, and each employee's hourly rate, including benefits, is used to calculate the overall cost of the project. Most sources are re-interviewed in person, so the hours that are tracked include travel time to and from those sources. In addition, the hours spent on a recovery project include time spent reviewing each case, scheduling new field work, writing up new ROIs, reviewing recovery fieldwork, correcting OPM's files to remove or replace inaccurate reports, and preparing the corrected cases for delivery to the requesting agencies.

The defendant admitted during an interview to receiving training, specifically, a presentation from NBIB addressing report falsification. In addition, as Charles S. Phalen, Jr., Acting Director of Defense Counterintelligence and Security Agency, explained, all background investigators for OPM receive an investigator's handbook, the first chapter of which is entitled "Investigator's Qualities, Conduct, Responsibilities, and the Government Code of Ethics," and which admonishes investigators that they must "NEVER falsify, manufacture, or enhance testimony, or in any way misrepresent any information collected from sources." *See* Victim Impact Statement ("VIS"), p. 2 (Exhibit 2 attached hereto). Thus, the defendant knew that there were consequences that would follow if she falsified her work.

The PSR determined that the defendant does not have the ability to pay a fine. *See* ECF No. 10 ¶ 56.

**1. Nature and Circumstances of the Offense and Its Seriousness**

The government respectfully submits that the factors set forth at 18 U.S.C. § 3553(a) support a sentence of a three-year period of probation, which is a variance of a Guidelines sentence as calculated and set forth in the PSR, but as was contemplated by the parties' plea agreement. The government requests that as one of the condition of probation that the defendant perform 100 hours of community service.

It is important that background investigations of applicants for top-secret security clearance, as well as positions involving Public Trust, be conducted properly because federal agencies rely on the ROIs in making hiring decisions and security clearance determinations. In complete disregard of the risks posed to our national security by her conduct, Pannocchia chose to fabricate interviews and record checks and not give these background investigations the time that they require and deserve.

The defendant did not choose to commit just one crime on one day. As set forth in the Statement of Offense, the defendant admitted that over a period of nearly a year she repeatedly made false representations in her ROIs that she had interviewed certain sources and reviewed certain records when she had not done so. Indeed, as part of the recovery effort an analysis of the interviews and record checks in defendant's ROIs has revealed more than a dozen instances of confirmed falsifications. As a result, the defendant compromised the integrity of all of her assigned background investigations through her false representations in some ROIs. The fact that testimony was attributed to a source who was not interviewed or the result of a record check was provided when the record was not checked is enough to raise doubts about the entire investigation and the other work the investigator claimed to have performed. Upon confirmed even a single falsification in an ROI, OPM is required to undertake a full recovery effort. Thus,

the defendant's crime had a far-reaching effect that extended well beyond the false statements which OPM's recovery effort has confirmed. *See* Exhibit 2.

As a background investigator for the federal government, the defendant was – or should have been – aware of the importance of her work and the critical elements of trust and ethics inherent in her position. Yet, she chose to falsify information in her background investigations.

**2. The History and Characteristics of the Defendant**

Section 3553(a)(1) requires the Court to consider in fashioning an appropriate sentence, the history and characteristics of the defendant. The PSR does not suggest that the defendant was mentally and emotionally incapable of avoiding her criminal conduct, but she instead chose to engage in it intentionally. *See* ECF No. 10 ¶¶ 42-43. The defendant is a 31-year-old college graduate. *Id.* ¶¶ 33-34, 44. She has an eight year-old child, for whom she has primary physical custody and joint legal custody. *Id.* ¶¶ 36-37. Pannocchia is employed with a company that specializes in supply chain risk management, vendor risk management, big data analytics, cyber security and supply chain strategy. *Id.* ¶ 46. To her credit, the instant offenses were the defendant's first criminal conviction and she has fully admitted to her actions. In addition, as stated above, the defendant accepted responsibility for her criminal conduct to the government, but has also informed her family and friends of her conduct. *Id.* ¶ 37-38.

**3. The Need to Promote Respect for the Law and Deter Similar Criminal Conduct**

For the defendant, a three-year probationary sentence would reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide a just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). Since the defendant is a 31 year old single mother with physical custody, has no criminal record, and has admitted responsibility for her criminal conduct, she is unlikely to recidivate. Section 3553(a), however, is not limited to considerations

regarding the need to deter the defendant from committing additional criminal conduct (specific deterrence), but also includes consideration of deterring other individuals contemplating engaging in similar conduct (general deterrence). *See*, *e.g.*, *United States v. Phinazee*, 515 F.3d 511, 515-16 (6th Cir. 2008) ("The plain language of the statute . . . also militates against limiting the authority of the court to specific deterrence . . . We note that this conclusion comports with the longstanding and uncontroversial practice of considering general deterrence in sentencing.").

In the instant case, a three-year probationary sentence that includes a significant community service obligation and payment of restitution should be sufficient to promote respect for the law. It is hoped that the recommended sentence will also serve as a general deterrent to other background investigators who would otherwise seek to falsify ROIs, as Pannocchia did.[3] As the Court is aware, despite OPM's best efforts to properly train and admonish its federal and contractor workforce, falsification by a small number of background investigators continues to occur. A fair and measured sentence that takes into account the defendant's very early guilty plea will hopefully reinforce to these would-be defendants that the Court and the criminal justice system view such conduct as serious and harmful to the community, that such actions will not be tolerated, and that it is important to admit any such wrongdoing as quickly as possible. This factor of deterring both the defendant and others suggests that a three-year probationary sentence is appropriate given all other factors. The government requests that the Court impose, as a specific condition of any probation, a number of community services hours to assist the defendant to rediscover her moral compass, acknowledge her actions and give back to the community in a positive way.

[3] It is also anticipated (and agreed to in the plea agreement) that the defendant will participate in a video-taped interview to be used for training purposes relating to background investigators.

**CONCLUSION**

The government does not oppose the defendant's request for a variance to a probationary sentence and recommends that the Court sentence defendant to a three-year period of probation. The government requests that the Court order the defendant to pay restitution to the federal government in the amount of $169,832.23, and order the defendant to perform 100 hours of community service.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
District of Columbia
D.C. Bar No. 472845

By: /s/ *Diane G. Lucas*
DIANE G. LUCAS, D.C. Bar. No. 443610
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7724 (Lucas)
Diane.Lucas@usdoj.gov